# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. § | | |
| ROLAND WADE JACKSON § | | |
| § | CASE NO. 4:13-CV-734 | |
| v. § | (Judge Mazzant/Judge Nowak) | |
| § | | |
| UNIVERSITY OF NORTH TEXAS, ET AL. § | | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On November 18, 2015, the report of the Magistrate Judge (Dkt. #93) was entered containing proposed findings of fact and recommendations that Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #40) be granted. The Magistrate Judge recommended Relator's claims be dismissed because Relator lacked standing to pursue his claims in this litigation, and Relator's claims are barred by the applicable statute of limitations. The Magistrate Judge further recommended that Relator's claims arising under 31 U.S.C. § 3729(a)(1)(A) and 3729(a)(1)(B) also be dismissed for failure to state a claim. Having received the report of the Magistrate Judge (Dkt. #93), having considered Relator's and Chase's timely filed objections (Dkt. #98; Dkt. #100) and Chase's response to Relator's objections (Dkt. #108), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct.

## BACKGROUND

The Magistrate Judge previously set forth the procedural and factual history of this litigation in detail, and such facts need not be restated fully herein (*see* Dkt. #93). This litigation

arises out of Relator's applications for, and alleged failure to receive, student loan funds during his attendance at University of North Texas ("UNT") (1992-1996), and the garnishment of certain federal payments owed to him thereafter (Dkt. #10 at 8-9).[1] In the alternative, Relator also asserts state law claims for conspiracy and unjust enrichment. *Id*. at 34. Generally, Relator contends that he attended UNT on athletic scholarship from 1992 through 1996. *Id*. at 8. While attending UNT, Relator applied for two student loans relating to his claims against Chase: (1) a $5,500.00 unsubsidized FFELP loan for the 1994-1995 school year from an entity alleged to be "Bank One" (which Relator contends is now Chase) (the "1994 Loan"); and (2) a $5,500.00 unsubsidized FFELP loan for the 1995-1996 school year from Chase (the "1995 Loan") (collectively with the 1994 Loan, the "Loans"). *Id*. at 12-13. Relator argues that the estimated financial assistance amount submitted to Chase in connection with the Loans was too low because it did not include his athletic scholarship award amount. *Id*. Inclusion of Relator's scholarship amount would have allegedly limited Relator's eligibility for additional aid and would have resulted in Relator not qualifying for this financial assistance. *Id*. at 15. Relator argues that Chase approved the "falsely certified" Loans even though Relator was ineligible to receive them. *Id*. Relator asserts that Nelnet, Inc. ("Nelnet") a third-party servicer for Chase, performed the origination processing and disbursement services for the Loans with funds drawn from a Chase account. *Id*. at 12-15. Relator asserts that UNT eventually realized its error in omitting the athletic scholarship amount, and ultimately denied the Loans to Relator because it "did not want to violate NCAA Rules by physically disbursing" the Loans to Relator. *Id*. at 13.

---

[1] In the Magistrate Judge's report and recommendation, the Magistrate Judge stated that Relator's wages were garnished to repay the loan obligation to the Department of Education (Dkt. #93 at 1, 6). In his objections, Relator now clarifies that the alleged false claims submission caused the garnishment of (1) federal travel payments owed to Relator for payment towards his federal credit card (a condition of his federal employment); and (2) multiple income tax refunds (Dkt. #100 at 2). The Court notes this clarification in its Order; however, this distinction is irrelevant to the ultimate conclusions of the Magistrate Judge, and does not alter the result herein.

Notwithstanding UNT's decision not to disburse the funds, Relator contends that UNT received the full amount of the loan funds from Nelnet, issued checks to Relator as evidence that he received the funds, but in actual fact never disbursed those funds. *Id*. at 14-15. Relator graduated from UNT in May 1996, triggering Relator's repayment obligations on the Loans. *Id*. at 7-8.

Relator contends that Chase should not have relied on the representations made by UNT in the loan application and that it should have separately investigated and/or sought to determine the amount of Relator's estimated financial assistance. *Id*. at 15-16, 23-24. According to Relator, Chase's failure to independently verify the details of his loan obligations and/or obtain proof that the Loans were actually disbursed to Relator, caused SLM Corporation ("SLM") (on behalf of Chase) to thus improperly submit false claims to Texas Guaranteed Student Loan Corporation ("TG") for payment on July 26, 2005, in the amounts of $10,264.89 and $9,530.91. *Id*. at 33. Relator further asserts that this alleged improper submission thereafter caused TG to seize certain payments owed to Relator to repay the loan obligation to the Department of Education (the "Department"). *Id*. The entire amount of the allegedly improper Loans has now been satisfied in full. *Id*. at 30.

Relator filed this action under seal on December 11, 2013, asserting claims arising under the False Claims Act ("FCA") against Defendants UNT, Chase, Nelnet, TG, and SLM (Dkt. #1). Relator also asserts state law claims for conspirary and unjust enrichment. *Id*. The United States declined to intervene, and filed its notice indicating such on October 17, 2014 (Dkt. #8). On November 14, 2014, the Court acknowledged the United States' election to decline to intervene, and ordered the Complaint unsealed and served upon Defendants by Relator (Dkt. #9). On November 21, 2014, Relator filed an Amended Complaint, which is the live pleading in this

case (Dkt. #10). Thereafter, Relator served Defendants, including Chase, and such service was returned executed on January 12, 2015 (Dkt. #29). On February 3, 2015, Chase filed its Sealed Motion to Dismiss (Dkt. #40). On February 20, 2015, Relator filed a Response (Dkt. #45). On March 3, 2015, Chase filed a Reply (Dkt. #51), and on May 28, 2015, a Notice of Supplemental Authority (Dkt. #81).

On November 18, 2015, the Magistrate Judge entered a report and recommendation containing proposed findings of fact and recommendations that Chase's Motion to Dismiss (Dkt. #40) be granted, and Relator's claims against Chase be dismissed in their entirety with prejudice (Dkt. #93). The Magistrate Judge recommended that Relator's claims be dismissed because Relator lacks standing to challenge this litigation, as Relator signed a release during previous settlement negotiations releasing Chase from liability resulting from the Loans, which necessarily includes those claims Relator attempts to assert herein; and further that the exercise of the Court's supplemental jurisdiction over Relator's pendent state law claims for conspiracy and unjust enrichment is appropriate. *Id.* The Magistrate Judge also recommended each of Relator's claims be dismissed because such claims are barred by the applicable statute of limitations. *Id*. Moreover, the Magistrate Judge further recommended Relator's claims arising under 31 U.S.C. § 3729(a)(1)(A) and 3729(a)(1)(B) also be dismissed for failure to state a claim. *Id*.

On December 2, 2015, Chase filed its objections to the report and recommendation of the Magistrate Judge (Dkt. #98), and on December 4, 2015, Relator filed his objections to the report and recommendation of the Magistrate Judge (Dkt. #100). On December 18, 2015, Chase filed a response to Relator's objections (Dkt. #108). The Court has reviewed the objections of each of the parties to the report and recommendation of the Magistrate Judge, and considers each herein.

## ANALYSIS

### I.  *Relator's Objections*

Relator objects to (1) the Magistrate Judge's finding that Relator lacks standing; (2) the Magistrate Judge's finding that Relator's claims under the FCA are barred by the statute of limitations; and (3) the Magistrate Judge's finding that Relator's Amended Complaint fails to state false claims were submitted in accordance with the FCA (Dkt. #100). The Court addresses each objection in turn.

#### A.  *Standing*

Relator objects to the finding of the Magistrate Judge that Relator lacks standing to assert his claims because he signed a settlement agreement and release of claims against Chase as a result of prior litigation against Chase (Dkt. #93 at 9). More specifically, the Magistrate Judge considered whether the Relator's allegations of fraud were sufficiently disclosed to the United States (specifically the Department of Education) prior to the March 8, 2012 Confidential Settlement Agreement and Release of Claims (the "2012 Settlement Agreement"), and whether the government had opportunity to fully investigate the allegations (Dkt. #93 at 11-12). The Magistrate Judge considered in particular two facts: (1) that Relator brought his allegations of fraud to the attention of the Department on multiple occasions – beginning as early as 2006; and (2) a March 29, 2011 letter sent by the Department to Relator indicating that it understood Relator alleged that he "did not receive the entire loan amount," and that "this is not an enforceable debt," but also informing Relator that the information was insufficient to "show that the lender or servicing agent failed to meet [federal student loan legislation and regulation] requirements" or "that the debt [was] not owed." *Id*. The Magistrate Judge therefore found that "the disclosures Relator made to the Department were sufficient to put the government on notice

of Relator's fraud allegations, and the Department had more than enough information to investigate – as evidenced by the references made in the Department's March 29, 2011 letter to Relator." *Id*. The Magistrate Judge concluded that Relator lacked standing to pursue his claims, and recommended dismissal.

In his objections, Relator does not dispute that the Department was well aware of his allegations prior to March 8, 2012; however, Relator now argues that the disclosures made to the Department were not sufficient to put the government on notice of Relator's fraud allegations because the Department lacked sufficient documentation (Dkt. #100 at 2). Particularly, Relator asserts that on September 12, 2011, he received documents in response to a Freedom of Information Act ("FOIA") request sent to the Department requesting "a copy of all document(s) used by Chase to file the default claim." *Id*. at 3. Relator contends that the following documents were missing from the Department's production: (1) Relator's athletic scholarship award letters; (2) UNT's documents related to the Loans, including the denial of the Loans; (3) Nelnet's loan disbursement check; and (4) UNT's cancelled checks. *Id*. at 3-4. Relator argues that these missing documents illustrate that the government lacked specific documents to prove the existence of the fraud and detailed information regarding his ineligibility for the Chase loans, and that the government, therefore, could not have conducted a sufficiently thorough investigation of Relator's claims. *Id*. at 5. Relator contends that the government could not have had a full opportunity to investigate his claims until December of 2013, when this litigation was filed, and for this reason, Relator asserts that the Magistrate Judge's conclusion is in error. *Id*. at 6.

As an initial matter, "the consent of the government is not a necessary condition precedent to enforcement of an otherwise valid release where such a release is executed prior to

filing a *qui tam* action." *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 600 F.3d 319, 328 (4th Cir. 2010); *see also, e.g., United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1168 (10th Cir. 2009); *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 915 (8th Cir. 2001); *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 960 (9th Cir. 1995). Courts generally enforce a pre-filing release of a relator's right to bring a *qui tam* action so long as the relator's allegations of fraud were sufficiently disclosed to the government prior to the release, and the government had opportunity to fully investigate the allegations. *Radcliffe*, 600 F.3d at 332; *United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 481 F. Supp. 2d 815, 820-21 (S.D. Tex. 2007)*, aff'd* 575 F.3d 458 (5th Cir. 2009) (refusing to uphold a release after concluding that allegations were insufficiently disclosed to the government prior to the release). Some courts have framed this issue in terms of the public's interest:

> When the government is unaware of potential FCA claims the public interest favoring the use of *qui tam* suits to supplement federal enforcement weighs against enforcing prefiling releases. But when the government is ***aware of the claims***, prior to suit having been filed, public policies supporting the private settlement of suits heavily favor enforcement of a prefiling release.

*Radcliffe*, 600 F.3d at 332 (emphasis added) (omitting internal citations); *see also Ritchie*, 558 F.3d at 1170; *Gebert*, 260 F.3d at 915; *Green*, 59 F.3d at 960. Thus, the focus of the Court's inquiry must be on whether the allegations of fraud were sufficiently disclosed to the government – whether the government was generally aware of the claims – before Relator signed the release on March 8, 2012. *Id*. This is the standard applied by the Magistrate Judge, and Relator does not dispute that this is the correct standard (Dkt. #93 at 11; Dkt. #100 at 2). Relator asserts only that the government could not have had sufficient information to investigate his claims because it lacked the aforementioned documents (Dkt. #100 at 3).

7

The Court agrees with the Magistrate Judge that the Department was aware of Relator's fraud allegations in advance of March 8, 2012 (Dkt. #93 at 11). Again, Relator brought his allegations of fraud to the attention of the Department on multiple occasions, beginning as early as 2006 (*see* Dkt. #10, Ex. U at 2, Ex. T at 2). On March 29, 2011, the Department sent Relator a letter in response to Relator's complaints, indicating it understood Relator was "dissatisfied with the manner in which [his] account has been administered by the lender, loan servicer, and guaranty agency," and that Relator alleged that he "did not receive the entire loan amount," and that "this is not an enforceable debt" (Dkt. #10, Ex. U). After considering Relator's complaints, the Department advised him that the information was insufficient to "show that the lender or servicing agent failed to meet [federal student loan legislation and regulation] requirements" or "that the debt [was] not owed." *Id*. at 2. The Magistrate Judge correctly found that "the disclosures Relator made to the Department were sufficient to put the government on notice of Relator's fraud allegations, and the Department had more than enough information to investigate – as evidenced by the references made in the Department's March 29, 2011 letter to Relator" (Dkt. #93 at 12 (citing *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997) (finding prefiling release enforceable when the government had full knowledge of the relator's charges and had investigated them before the settlement agreement)).

Moreover, Relator's contention that the government could not fully investigate the fraud because it lacked certain documents is without merit. First, Relator points to a FOIA response received from the Department on September 12, 2011, as evidence that the Department did not have the previously mentioned documents from UNT (Dkt. #100 at 3). However, Relator's FOIA request was narrowly tailored and asked only for "a copy of all document(s) used by Chase to file the default claim." *Id*. Relator did not request all documents in the Department's

file, which may very well have included UNT's documentation. Thus, the only significant inference that can be drawn from the Department's FOIA response is that Chase did not rely on the UNT documentation when submitting the default claim.

Further, courts have rejected the argument that the government must have "full knowledge of the scope of the fraud" at the time a pre-filing release is signed by a relator in order to find the government had sufficient information to investigate the allegations. *See Ritchie*, 558 F.3d at 1170. In *Ritchie*, the Tenth Circuit found that the information provided to the government was sufficient because it gave the government "ample opportunity to uncover and prosecute any fraud that had taken place." *Id.*; *see also Radcliffe*, 600 F.3d at 331-332 (holding that the government need not conduct an exhaustive investigation, so long as it had an opportunity to do so). Here, there is no doubt that Relator's allegations were sufficient to allow the Department to investigate, since the Department was aware of the specific allegations and had opportunity to uncover and/or investigate any fraud. At most, Relator's additional documents merely corroborate the allegations he had already made to the Department. For the foregoing reasons, the Court finds the Department had sufficient information on March 29, 2011, to make it aware, and thus, the 2012 Settlement Agreement should be enforced. Accordingly, Relator's objection is overruled.

### B. *Statute of Limitations*

Relator next objects to the Magistrate Judge's conclusion that Relator's claims arising under the FCA should be dismissed because they are barred by the applicable statute of limitations (Dkt. #100 at 6). More specifically, Relator persists in his argument that the limitations period should be tolled under 31 U.S.C. § 3731(b)(2), which provides that a claim must be brought within three years "after the date when facts material to the right of action are

known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed." Relator argues that this action was filed in December 2013, which was within three (3) years of the date when facts material to the right of action were known (December 2, 2011, according to Relator), and less than ten (10) years from the date which the violation occurred. *Id*. at 6-7. Chase contends that Relator's argument is merely a restatement of his prior argument, which the Magistrate Judge already considered and rejected (Dkt. #108 at 5-6).

> The text of the FCA's limitations provision states an FCA lawsuit may not be brought:
>
> > (1) more than 6 years after the date on which the violation of [the FCA] is committed, or
> >
> > (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with the responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). Relator does not dispute that the six-year limitations period ran before he filed this litigation (Dkt. #100). In keeping with the rulings of other courts that have considered this issue, and in particular the Fifth Circuit, the Magistrate Judge found that Relator could not rely on the ten-year statute of limitations period because the United States declined to intervene (Dkt. #93 at 14-15 (citing *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 814 (E.D. Tex. 2008)); *United States ex rel. Erskine v. Baker*, No. 99-50034, 2000 WL 554644 (5th Cir. Apr. 13, 2000); *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 535-36 (S.D. Tex. 2011), *vacated in part on other grounds by* 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-

247-PRM, 2010 WL 1645969, at *3-8 (W.D. Tex. Jan. 21, 2010)). Specifically, the Magistrate Judge concluded that Relator's claims are subject to the six-year limitations period, and found that Relator's claims were filed more than two (2) years after the expiration of this period. *Id*. at 15. Other than reurging his previous argument, Relator cites no additional or new case law and offers no reason why the Court should ignore the case law in the Fifth Circuit and reach a contrary result in this case. Accordingly, the Court finds that Relator's objection is overruled and agrees with the Magistrate Judge that Relator's FCA claims are subject to the six-year limitations period.

### C. *Failure to State a Claim*

Relator also objects to the finding of the Magistrate Judge that Relator's FCA claims should be dismissed for failure to state a claim (Dkt. #100 at 7-10). More specifically, Relator does not dispute the Magistrate Judge's finding that Chase was entitled to rely on the certifications of eligibility by UNT and Relator, but continues to argue that the promissory notes for the Loans were unenforceable because the promissory notes lacked a signature from Bank One/Chase (Dkt. #93 at 17-19; Dkt. #100). The Magistrate Judge found that Relator alleged only two claims were falsely submitted to the government for payment, and that Relator failed to allege that either of those claims were knowingly false (Dkt. #93 at 18-20). Relator now advances the argument that Chase had actual knowledge that the promissory notes were not complete, and acted in deliberate ignorance or reckless disregard when the claims were submitted for payment (Dkt. #100 at 8-9). However, Relator cites no case law and/or authority in support of this proposition; and, as Chase points out in its response, the Federal Family Education Loan regulations require the *borrower* to sign the promissory note, not the *lender* (Dkt. #108 at 6 (citing 34 C.F.R. § 682.206(d) (2005))). Moreover, a promissory note requires only the borrower's signature to be enforceable against the borrower. *Id.* (citing *Alexander v.*

11

*Wells Fargo Bank, N.A.,* No. 02-10-00005-CV, 2011 WL 1331519, at *3 n.4 (Tex. App. – Ft. Worth, Apr. 7, 2011)). Thus, on the facts before the Court, the Court finds that Relator cannot show the promissory notes were unenforceable. In any event, even if Relator could demonstrate the promissory notes were unenforceable, Relator still does not sufficiently allege the scienter required under the FCA. The FCA's scienter requirement is high, and a realtor may not simply allege that "the defendants knowingly did this or recklessly did that." *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994). In other words, Relator must allege "a statement known to be false, which means a lie is actionable but not an error." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). The Magistrate Judge found, and the Court agrees, that Relator fails to allege any false statements or certifications made by Chase during the course of presenting the default claims, and only vaguely references a failure to provide "accurate documentation," which is not sufficient to state a claim under the FCA (Dkt. #93 at 18). Relator's objection is overruled.

### D. *State Law Claims*

Relator next objects to the finding of the Magistrate Judge that Relator's state law claims are barred by the statute of limitations (Dkt. #100 at 10).[2] Relator asserts that the statute of limitations should not have started running on his individual state law claims until all administrative attempts to resolve Relator's complaints had run their course. *Id*. More specifically, Relator contends that as late as March of 2012, Relator was led to believe that the Department would resolve his complaints after a hearing on the matter. *Id*. Relator asserts that he filed this litigation within two years of his belief that an administrative proceeding was still available to him. *Id*. Chase contends that this is the first time Relator has made this argument,

---

[2] Relator does not object to the Magistrate Judge's finding that Relator failed to state a claim for unjust enrichment, which is an independent ground for dismissal of this claim. For this reason alone, the Court agrees with the Magistrate Judge and finds Relator's unjust enrichment claim is dismissed.

and that there is no case law and/or authority to support the proposition that administrative remedies must be exhausted before the statute of limitations begins to run (Dkt. #108). The Court agrees. Relator makes no attempt to show that he was required to exhaust his administrative remedies at the Department, nor that he did actually exhaust his remedies prior to filing common law claims against Chase. Finally, as previously described, Relator released his claims against Chase in the 2012 Settlement Agreement, and there is no public policy ground for failing to enforce the release as to the common law claims. Thus, even if Relator's claims were not time barred (which they are), they have already been released. Relator's objection is overruled.

### E. *Relator's Motion for Leave to Amend*

Relator lastly objects to the Magistrate Judge's denial of his request for leave to amend his Complaint (Dkt. #100 at 11). The Magistrate Judge found that any amended complaint would be futile since Relator cannot plead facts sufficient to overcome his lack of standing and/or the statute of limitations bar. *See Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (a district court may deny leave to amend a complaint if amendment would be futile). The Court agrees with the Magistrate Judge that Relator cannot overcome the release of his claims in the 2012 Settlement Agreement, nor the statute of limitations bar. Accordingly, the Court finds amendment of Relator's Complaint would be futile, and Relator's objection is overruled.

## II. *Chase's Objections*

Chase advances a single objection to the conclusions of the Magistrate Judge: that Relator sufficiently pleaded conspiracy. Chase contends that while Relator's allegations touch upon the essential elements of a conspiracy claim, Relator failed to allege facts to support his

claim (Dkt. #98 at 3-4). Chase contends that Relator's allegations consist of a single paragraph, which is insufficient under the Federal Rules of Civil Procedure. *Id*. The Magistrate Judge previously considered this argument, and on this front, Relator's objection is overruled.

Chase now also asserts for the first time that Relator cannot plead a conspiracy claim under the FCA when his allegations fail to demonstrate an underlying violation of the FCA. *Id*. (citing *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010) (holding that relator failed to allege conspiracy to violate the FCA where his allegations failed to show a violation of the FCA); *United States ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, No. 3:10-CV-1784-L, 2012 WL 3649699, at *8 (N.D. Tex. Aug. 24, 2012)). Chase argues that because the Magistrate Judge concluded that there is no underlying FCA violation, then Relator cannot assert a claim for conspiracy. This argument was not presented to the Magistrate Judge, and is argued for the first time to the Court. Based upon applicable case law, Chase's argument appears to be correct; however, it does not alter the ultimate recommendation of the Magistrate Judge. The Magistrate Judge recommended that Relator's claims (including Relator's claims for conspiracy) be dismissed for lack of standing, as well as barred by the statute of limitations, and the Court has adopted the findings and conclusions of the Magistrate Judge on that basis. Thus, although not relevant to the overall findings of the Court, Chase's objection is sustained.

# CONCLUSION

Having received the report of the United States Magistrate Judge, having considered each of Relator's and Chase's timely filed objections (Dkt. #98; Dkt. #100) and Chase's response (Dkt. #108), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #93) as the findings and conclusions of the Court, with the exception of the Magistrate Judge's finding that Relator sufficiently stated a claim for conspiracy. However, the Court's failure to adopt this single finding does not alter the ultimate recommendation of the Magistrate Judge, which the Court adopts herein.

It is, therefore, **ORDERED** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #40) is **GRANTED**, and Relator's claims against Chase are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**
**SIGNED this 1st day of February, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE